**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD BALLARD** | : | **NO.  03-810-01** |

**ORDER AND MEMORANDUM**

**O R D E R**

**AND NOW**, this 11th day of March, 2009, upon consideration of defendant's *pro se*

Motion to Have Sentence Vacated, Set Aside, and/or Corrected Pursuant to 28 U.S.C. § 2255

(Document No. 110, filed December 8, 2008); the United States of America's Response in

Opposition to Defendant's Section 2255 Motion (Document No. 115, filed January 26, 2009);

and *Pro Se* Defendant['s] Response to United States Opposition of 2255 Motion (Document No.

116, filed February 9, 2009), for the reasons set forth in the attached Memorandum, **IT IS**

**ORDERED** that defendant's *pro se* Motion to Have Sentence Vacated, Set Aside, and/or

Corrected Pursuant to 28 U.S.C. § 2255 is **DENIED.**

  **IT IS FURTHERED ORDERED** that a certificate of appealability will not issue on the

ground that defendant has not made a substantial showing of a denial of a constitutional right as

required under 28 U.S.C. § 2253(c)(2).

**M E M O R A N D U M**

**I.  INTRODUCTION**

  Defendant Richard Ballard, who is currently incarcerated at the Low Security

Correctional Institution in Allenwood, Pennsylvania, pled guilty to possession with intent to

distribute cocaine and possession of a firearm and ammunition by a convicted felon.  On

December 8, 2008, defendant filed the pending *pro se* Motion to Have Sentence Vacated, Set

Aside, and/or Corrected Pursuant to 28 U.S.C. § 2255.  In the motion, defendant challenges his sentencing under the Armed Career Criminal Act, 18 U.S.C. § 924(e), which provides for a fifteen-year mandatory minimum sentence for a defendant convicted of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), if the defendant has three prior convictions "for a violent felony or a serious drug offense."  Defendant argues in his motion that there was no factual basis for the three prior convictions to which he stipulated in the plea agreement and that both his guilty plea and his sentencing counsel were ineffective.  For the reasons set forth below, the Court concludes that defendant's arguments lack merit and denies defendant's *pro se* Motion to Have Sentence Vacated, Set Aside, and/or Corrected Pursuant to 28 U.S.C. § 2255.

## II.    FACTS AND PROCEDURAL HISTORY

A detailed factual and procedural history is included in the Court's Memorandum and Order of July 18, 2005.  See Mem. & Order of July 18, 2005, at 1–5 (Doc. No. 60); United States v. Ballard, No. 03-CR-810, 2005 WL 1690826, at *1–3 (E.D. Pa. July 18, 2005).  Accordingly, the Court sets forth in this Memorandum only the background necessary to resolve the motion presently before the Court.

A six-count Indictment filed on December 9, 2003 charged defendant Richard Ballard as follows:  (1) possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count I); (2) possession of cocaine base ("crack") in violation of 21 U.S.C. § 844(a)(1) (Count II); (3) possession of heroin, in violation of 21 U.S.C. § 844(a) (Count III); (4) possession of a firearm and ammunition after having been convicted in state court of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count IV); (5) possession of body armor after having been convicted of

a crime of violence, in violation of 18 U.S.C. § 931 (Count V); and (6) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count VI).

On August 5, 2004, defendant entered into a guilty plea agreement with the government in which he agreed to plead guilty to Counts I, IV, and VI of the Indictment. (Doc. No. 37, filed Aug. 24, 2004.) Defendant was represented by Gregory J. Pagano, Esquire. In the plea agreement, the parties stipulated that defendant had two prior state court convictions for felony robbery in the first degree and one prior state court conviction for possession with intent to distribute a controlled substance. (Plea Agr. ¶ 8.) The parties further stipulated that pursuant to United States Sentencing Guidelines ("U.S.S.G" or "Guidelines") § 4B1.4(c)—the armed career criminal guideline—defendant's criminal history category was VI, and that, under U.S.S.G. §§ 3E1.1(a) and (b), defendant was entitled to a three-level reduction for acceptance of responsibility. (Id.) In the agreement, defendant also expressly waived his rights to appeal or collaterally attack his conviction or sentence with three exceptions: (1) if the government appealed from defendant's sentence; (2) if defendant's sentence exceeded the statutory maximum; or (3) if the sentencing judge erroneously departed upward from the otherwise applicable guideline range. (Id. ¶ 9.)

On August 30, 2004, the Court held a change of plea hearing and accepted defendant's guilty plea as to Counts I, IV, and VI. The Court reviewed the Indictment with defendant, who confirmed that he understood each count. (Change of Plea ("COP") Hr'g Tr. 12–15, Aug. 30, 2004.) At that hearing, defendant challenged the notice of prior convictions appended to the Indictment by arguing that his two convictions for robbery were consolidated and should only count as a single conviction for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). (Id. at 47–51.) The Court noted defendant's objection and stated that it was "a

subject on which we need more information and we'll have it." (Id. at 49–50.)

In response to the Court's questioning, defendant confirmed that he had decided to plead guilty and sign the plea agreement, including the stipulation to three prior state convictions, of his own free will. (Id. at 55.) After inquiring of defense counsel and government counsel whether it was established to their satisfaction that defendant was entering the plea knowingly, voluntarily, and intelligently, the Court accepted defendant's plea of guilty as to Counts I, IV, and VI. (Id. at 72–74.)

On September 16, 2004, defendant filed a *pro se* Motion to Withdraw Guilty Plea. (Doc. No. 41, filed Sept. 16, 2004.) Defendant's counsel also filed a supplemental memorandum of law in support of defendant's motion. (Doc. No. 50, filed Nov. 17, 2004.) The Court held a hearing on that motion on February 17, 2005. By Memorandum and Order dated July 18, 2005, the Court granted defendant's motion as to Count VI (possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)) and denied defendant's motion in all other respects. Mem. & Order of July 18, 2005 (Doc. No. 60). The Court concluded that defendant's plea was not knowing and voluntary with respect to Count VI as he did not understand the nature of the charge. Id. at 10–11. With respect to defendant's argument that his plea was invalid due to ineffective assistance of counsel, the Court disagreed and held that counsel was effective regarding defendant's guilty plea. Id. at 11–12. Following the Court's ruling, defendant filed a *pro se* motion to dismiss Count VI of the Indictment. (Doc. No. 63, filed Aug. 9, 2005.) By Order dated September 16, 2005, the Court granted defendant's motion and dismissed Count VI. Order of Sept. 16, 2005 (Doc. No. 72).

The Court held a sentencing hearing on March 22, 2006, at which defendant was represented by Cheryl J. Sturm, Esquire. Defendant argued that the state court convictions to

4

which he had stipulated did not categorically satisfy the definition of a violent felony or a serious drug offense under the ACCA, 18 U.S.C. § 924(e).[1]  (Sentencing Hr'g Tr. 5–10, 34–47, Mar. 22, 2006.)  Defendant further argued that the documents proffered by the government in proof of his state court convictions were not sufficient to establish that defendant had pled guilty to three felonies satisfying § 924(e).  (Id. at 11–24, 31, 34–47.)  While observing that defense counsel had argued superbly, the Court, in light of Third Circuit precedent, rejected both of defendant's arguments.  (Id. at 25, 29, 48, 91.)  Reviewing the records presented by the government, the Court ruled that they established that defendant had been convicted of three felonies encompassed by § 924(e)—two robberies and a serious drug offense.  (Id. at 25, 48.)

Turning to the Guidelines, the Court determined that the total offense level was 31 and that defendant had a criminal history category of VI.  (Id. at 71.)  This resulted in a Guidelines sentencing range of 188 to 235 months.  (Id.)  Considering all of the circumstances, the Court determined that a sentence outside of the advisory Guidelines range was appropriate and sentenced defendant to 180 months, the ACCA's 15-year mandatory minimum sentence.  (Id. at 85–86.)

Defendant, represented by Ms. Sturm, appealed his sentence to the Third Circuit on March 23, 2006.  Defendant argued that his appeal fell within the exceptions to the appellate waiver as the 180-month sentence was above the statutory maximum for a violation of 18 U.S.C. § 922(g) and was also an upward departure without notice.  (Appellant's Br. 30.)  Defendant further argued that the waiver should not be enforced because counsel who represented him with

---

[1] Section 924(e) provides, in relevant part, that "[i]n the case of a person who violates section 922(g) of this title [the felon in possession of a firearm provision] and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years . . . ."

respect to the plea agreement and the waiver contained therein was ineffective.  (Id. at 30–32.)

Substantively, defendant reiterated the arguments that he made at sentencing—(1) the

convictions to which he stipulated in the plea agreement did not categorically satisfy the

definitions of violent felony and serious drug offense under the ACCA, and (2) the documents

provided by the government were not sufficient proof that he was convicted of such crimes.  (Id.

at 23–28, 35–41.)

On August 27, 2007, in a non-precedential opinion, the Third Circuit affirmed

defendant's conviction and sentence.  United States v. Ballard, 245 F. App'x 137, 140 (3d Cir.

Aug. 29, 2007).  The court held that neither of the exceptions to the waiver applied to

defendant's appeal.  Id. at 139–40.  With respect to defendant's ineffective assistance of counsel

argument, the Court concluded that he "failed to prove that he did not knowingly and voluntarily

enter into the plea agreement."  Id. at 139.  Citing to a holding by this Court in its Memorandum

and Order of July 18, 2005 that there was no ineffective assistance of counsel, the Third Circuit

rejected defendant's argument.  Id.  The court noted, however, that it was only considering the

claim of ineffective assistance of counsel in relation to defendant's direct appeal and left open the

possibility to revisit the same argument on collateral review.  Id.  "Generally, we only consider

ineffective assistance of counsel claims on collateral review.  We see no reason to deviate from

our general practice here.  Accordingly, Ballard may raise an ineffective assistance of counsel

claim on collateral review."  Id.  The Third Circuit's mandate issued on March 26, 2007.

On December 8, 2008, defendant filed the pending *pro se* Motion to Have Sentence

Vacated, Set Aside, and/or Corrected Pursuant to 28 U.S.C. § 2255 ("2255 Motion").  (Doc. No.

110, filed Dec. 8, 2008.)  In the motion, defendant does not challenge his guilty plea to Counts I

and IV of the Indictment but only the application of § 924(e) at sentencing.  (2255 Mot. 2.)

Defendant collaterally attacks his sentence on a number of grounds, including, *inter alia*, that there was no factual basis for the convictions to which he stipulated in the plea agreement and that both his plea and his sentencing counsel were ineffective.  Defendant further argues that his waiver of collateral attack rights should not be enforced.

## III.   LEGAL STANDARD

### A.   Waiver of Appellate and Collateral Attack Rights

Waivers of appellate and collateral attack rights are generally valid if entered into "knowingly and voluntarily."  United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008); United States v. Gwinnett, 483 F.3d 200, 203 (3d Cir. 2007).  Such waivers should be strictly construed. United States v. Khattak, 273 F.3d 557, 562 (3d Cir. 2001).[2]  "In determining whether a waiver . . . is 'knowing and voluntary,' the role of the sentencing judge [in conducting a colloquy under Federal Rule of Criminal Procedure 11] is critical."  Id. at 563.  Yet even if a waiver of appellate and collateral attack rights is knowing and voluntary, "an error amounting to a miscarriage of justice may invalidate" it.  Id. at 558; accord Mabry, 536 F.3d at 238–39; Gwinnett, 483 F.3d at 203.  To determine whether a "miscarriage of justice" has occurred, courts in this Circuit consider the following factors: "'[T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result."  Khattak, 273 F.3d at 563 (citing United States v. Teeter, 257 F.3d 14, 25–26 (1st Cir. 2001)).

---

[2] Khattak and Gwinnett concerned the validity of waivers of appellate rights.  Khattak, 273 F.3d at 558; Gwinnett, 483 F.3d at 201.  In Mabry, the Third Circuit extended the holdings of those cases to encompass waivers of collateral attack rights.  536 F.3d at 237.

The Third Circuit has expressly declined to "earmark specific situations," in which enforcement of a waiver would amount to a "miscarriage of justice."  Id. at 563.  Courts in this Circuit, however, have repeatedly held that enforcement of a waiver that is itself based upon ineffective assistance of counsel may result in a miscarriage of justice.  United States v. Akbar, 181 F. App'x 283, 286 (3d Cir. 2006) (holding that "it is possible for there to be a miscarriage of justice when plea proceedings were tainted by ineffective assistance of counsel" (internal quotation marks and citation omitted)); United States v. Barralaga-Rodriguez, 164 F. App'x 270, 274 (3d Cir. 2006); United States v. Perez, Nos. 03-CR-801, 06-CV-2923, 2006 WL 3300376, at *4 (E.D. Pa. Nov. 9, 2006); United States v. Robinson, Nos. 02-CR-760, 04-CV-884, 2004 WL 1169112, at *3 (E.D. Pa. Apr. 30, 2004) (collecting cases).[3]  An ineffective assistance of counsel argument "survives only with respect to those discrete claims which relate directly to the negotiation of the waiver."  Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1998); accord Perez, 2006 WL 3300376, at *4.

### B.    Procedural Default

A motion under 28 U.S.C. § 2255 cannot be used as a substitute for a direct appeal. Gov't of the Virgin Islands v. Nicholas, 759 F.2d 1073, 1074 (3d Cir. 1985).  Accordingly, a federal prisoner is procedurally barred from collaterally attacking his sentence under § 2255 insofar as the attack is based upon issues that could have been, but were not, raised on direct appeal.  See United States v. Frady, 456 U.S. 152, 164–65 (1982); United States v. Essig, 10 F.3d

---

[3] There is also authority for the proposition that ineffective assistance of counsel as to an appellate waiver may render the waiver unknowing and involuntary.  See, e.g., United States v. Hernandez, 242 F.3d 110, 113–14 (2d Cir. 2001); Perez, 2006 WL 3300376, at *3.  For the sake of clarity, this Court analyzes defendant's ineffective assistance of counsel claim under the "miscarriage of justice" prong of Khattak.  Were the Court to analyze defendant's claim under the "knowing and voluntary" prong of Khattak, the result would be the same.

968, 978–79 (3d Cir. 1993).

Procedural default will be excused if a defendant can demonstrate cause and prejudice or that a failure to consider his claims will result in a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). With respect to the cause and prejudice requirement, courts have held that cause exists when a defendant demonstrates "some objective factor external to the defense [that] impeded counsel's efforts to comply with the . . . procedural rule." Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). The cause must be "something that cannot fairly be attributed" to the defendant. Coleman, 501 U.S. at 753. Prejudice means that the alleged error worked to the defendant's actual and substantial disadvantage. United States v. Frady, 456 U.S. 152, 170 (1982).

To show a fundamental miscarriage of justice, a defendant must present new evidence that he is actually innocent of the crime for which he has been convicted. Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir. 2002). To establish the requisite probability of actual innocence, the defendant must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). This exception only applies when "a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." Murray, 477 U.S. at 496.

Claims of ineffective assistance of counsel are an exception to the general rule of procedural default. Such claims are generally eschewed on direct appeal in the Third Circuit, with the preference being that they be raised for the first time in § 2255 proceedings. United States v. Thornton, 327 F.3d 268, 271–72 (3d Cir. 2003); United States v. Cocivera, 104 F.3d 566, 570 (3d Cir. 1996).

9

### C.    Ineffective Assistance of Counsel

Several of defendant's claims are based upon the theory of ineffective assistance of counsel. "Strickland v. Washington supplies the standard for addressing a claim of ineffective assistance of counsel." United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

This standard requires a familiar two-part inquiry. First, "the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness." Id. at 687–88. The measure for counsel's performance under the first prong of Strickland is "whether counsel's assistance was reasonable considering all the circumstances" including prevailing professional norms. Id. at 687–88. "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." Id. at 687. The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

This two-part test is applicable to defendants who challenge the effectiveness of counsel after the entry of a guilty plea. United States v. Kaufman, 109 F.3d 186, 190 (3d Cir. 1997) (citing Hill v. Lockhart, 474 U.S. 52 (1985)).

## IV.    DISCUSSION

### A.    Validity of Defendant's Waiver of Appellate and Collateral Attack Rights

Defendant makes two arguments attacking the validity of his waiver of appellate and collateral attack rights in the guilty plea agreement. First, defendant argues that his waiver was

10

not knowing and intelligent, although he does not specify the reasons for such a contention. (Def.'s Reply 4.)  Second, he argues that to enforce the waiver would work a "complete miscarriage of justice" as his sentence "reveals a fundamental defect[]," namely that there was an insufficient factual basis supporting his stipulation to three prior convictions in the plea agreement.  (Def.'s Mot. 5.)

At the change of plea hearing, at the request of the Court, government counsel reviewed and explained the terms of the waiver contained in the plea agreement.  (COP Hr'g Tr. 39–40, 46, Aug. 30, 2004.)  Defendant expressly confirmed that he understood the effect of the waiver and that he decided to plead guilty and sign the plea agreement, including the waiver, of his own free will.  (Id. at 39–40, 55.)  The Third Circuit has held that policy considerations counsel against permitting a defendant who has waived his post-conviction rights to later disavow the agreement:  "[I]f a defendant who has participated in a waiver proceeding is then allowed, without exception, to change his mind whenever he chooses, the doctrine of waiver will be rendered purposeless.  Moreover, such an indulgence would be bad judicial policy resulting in frequent hearings and the expenditure of untold judicial resources."  Fahy v. Horn, 516 F.3d 169, 187 (3d Cir. 2008).

Defendant has presented no clear argument as to why the Court should not rely on his statements regarding the waiver during the plea colloquy.  Defendant's unsupported *ex post* statements that the waiver was not knowing and intelligent, without more, fail to meet the burden required to rebut the presumption of truthfulness that attaches to the statements that he made, under oath, at the plea colloquy.

A miscarriage of justice that renders a waiver of appellate and collateral attack rights unenforceable is "something grave and out of the ordinary."  United States v. Mabry, 536 F.3d

11

231, 239 (3d Cir. 2008.)  Courts in the Third Circuit use the multi-factor test of United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001), to analyze whether the enforcement of a waiver would work a miscarriage of justice.  Critical to this analysis is whether a defendant seeks to raise any substantial, non-frivolous issues and whether the issues implicate fundamental rights or constitutional principles.  See Mabry, 536 F.3d at 243.  Employing such analysis, the Third Circuit has held that "it will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice."  United States v. Jackson, 523 F.3d 234, 244 (3d Cir. 2008).

While defendant claims that his sentence enhancement under § 924(e) was fundamentally defective, this is not the "rare and unusual situation" contemplated in Jackson.  As the Court's analysis herein demonstrates, defendant fails to raise a substantial, non-frivolous challenge to his sentencing under § 924(e).  As the application of § 924(e) to defendant's sentence was not in error, enforcement of his waiver will not result in a miscarriage of justice.

Courts in the Third Circuit have also consistently held that enforcement of a waiver that is itself a product of ineffective assistance of counsel can amount to a miscarriage of justice. United States v. Akbar, 181 F. App'x 283, 286 (3d Cir. 2006) (holding that "it is possible for there to be a miscarriage of justice when plea proceedings were tainted by ineffective assistance of counsel") (internal quotation marks and citation omitted).  Although defendant does not explicitly argue that his decision to sign the waiver was the result of ineffective assistance of counsel, the Court,  reading defendant's *pro se* motion generously, construes it as raising such a claim.  See Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers").

In paragraph 10 of the plea agreement, defendant stated that he was "satisfied with the

legal representation provided by the defendant's lawyer; [and] the defendant and this lawyer have fully discussed the plea agreement . . . ." (Plea Agr. ¶ 10.)  At the change of plea hearing, defendant confirmed that he was fully satisfied with his counsel.  (COP Hr'g Tr. 11.)  At sentencing, the Court reviewed defendant's waiver of appellate and collateral attack rights and noted that the Court did "not think there was any ineffectiveness in agreeing to that provision [the waiver] of the plea agreement."  (Sentencing Hr'g Tr. 33, Mar. 22, 2006.)  On appeal, the Third Circuit concluded that, with respect to the waiver of appellate rights, there was no ineffective assistance of counsel.  United States v. Ballard, 245 F. App'x 137, 140 (3d Cir. Aug. 29. 2007).  Nevertheless, the court allowed defendant to revisit such a claim on collateral review. Id.  As defendant has presented no evidence that his decision to waive his appellate and collateral attack rights was tainted by ineffective assistance of counsel, the Court sees no reason to disturb its conclusion at sentencing or the Third Circuit's holding on appeal.  Accordingly, the Court holds that defendant's waiver was not the product of ineffective assistance of counsel and that its enforcement would not work a miscarriage of justice.

Notwithstanding the Court's conclusion that defendant's waiver of appellate and post conviction rights is valid and should be enforced, the Court will review the merits of defendant's remaining claims.

### B.     Effect of Defendant's Medication

Defendant argues that as he was on medication during the change of plea hearing—at which time he accepted the plea agreement and the underlying stipulations—the Court "should have stopped [the] guilty plea hearing to [assess] if [the] medication defendant was taking could [affect] his understanding of the proceedings."  (Def.'s Mot. 3.)  Defendant could have raised such a challenge on direct appeal but failed to do so.  (See Appellant's Br.)  A defendant is

13

precluded from raising an issue on collateral attack under 28 U.S.C. § 2255 if the issue could have been, but was not, raised on direct appeal. See United States v. Frady, 456 U.S. 152, 164–65 (1982); United States v. Essig, 10 F.3d 968, 978–79 (3d Cir. 1993). Accordingly, the issue of the effect of defendant's medication is procedurally defaulted and may not serve as a ground for collaterally attacking defendant's conviction and sentence unless defendant can demonstrate cause and prejudice or a fundamental miscarriage of justice. To satisfy cause, a defendant must demonstrate "some objective factor external to the defense [that] impeded counsel's efforts to comply with the . . . procedural rule." Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Defendant has presented no such evidence and thus has not established cause for the procedural default. Defendant also has not satisfied the miscarriage of justice exception, as he has not presented any evidence of his actual innocence. See Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir. 2002). In fact, defendant challenges only his sentence and not his underlying guilty plea. (Def.'s Mot. 2.) While the issue is thus procedurally defaulted, the Court will nevertheless address the merits of defendant's claim.

Defendant's argument relies on a correct statement of the law—district courts have a duty to "make further inquiry into a defendant's competence to enter a guilty plea once the court has been informed that the defendant has recently ingested drugs or other substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights." United States v. Cole, 813 F.2d 43, 46 (3d Cir. 1987); accord United States v. Rossillo, 853 F.2d 1062, 1066–67 (2d Cir. 1988). The Court did so at the change of plea hearing.

At the change of plea hearing, in response to the Court's inquiry whether defendant was taking medication of any kind, defendant stated that he was on medication to treat diabetes and

14

depression.  (COP Hr'g Tr. 7–8, Aug. 30, 2004.)  The Court then asked whether, as far as

defendant knew, his medication affected his ability to think clearly and answer the Court's

questions; defendant replied that it did not.  (Id. at 9.)  This colloquy differs substantially from

the one found insufficient in Cole, in which "[t]he court simply failed to develop the record with

respect to the defendant's state of mind through further questioning and failed to make a finding

of competence which took the assertion of recent drug use into account."  813 F.2d at 46.  In

contrast, the colloquy at defendant's guilty plea hearing adequately assessed defendant's state of

mind and satisfied the Court's duty to inquire about the effects of defendant's medication.

Defendant offers no new evidence that his medication rendered him incompetent to plead guilty.

Accordingly, the Court concludes that defendant's argument lacks merit and that defendant was

competent to plead guilty despite being on medication.

### C.     Number of Defendant's Prior Convictions

Defendant argues that the sentencing enhancement of the Armed Career Criminal Act

("ACCA"), 18 U.S.C. § 924(e), was improperly applied as the record demonstrated only two

prior convictions, not the three required by § 924(e).  (Def.'s Mot. 6–8; Def.'s Reply 2.)  While

defendant raised this argument at the change of plea hearing, he did not do so on direct appeal.

For the reasons previously stated, defendant has not demonstrated cause and prejudice or a

fundamental miscarriage of justice that would excuse the procedural default.  Accordingly, this

claim is procedurally defaulted.  Nevertheless, the Court addresses it on the merits.

At the change of plea hearing, defendant argued that two of three convictions to which he

had stipulated in the plea agreement were consolidated.  (COP Hr'g Tr. 48–49.)  Government

counsel explained that while the sentencing proceedings for defendant's two robbery convictions

were only one day apart, the indictment and conviction dates for the two offenses were distinct.

15

(Id.)  Defense counsel confirmed that there were two separate arrest dates—November 9, 1974 and January 23, 1975.  (Id. at 49.)  The Court stated that this issue was "a subject on which we need more information and we'll have it."  (Id. at 50.)

On March 15, 2006, one week before sentencing, the government provided the Court with copies of certified records of defendant's prior convictions from the Philadelphia County Court of Common Pleas.  These records demonstrated that defendant was convicted of two separate robberies, with separate arrest and conviction dates.  At the sentencing hearing, defendant did not renew his consolidation argument, and the Court found that the records presented by the government established that defendant had been convicted of three distinct felonies—two robberies and a serious drug offense.  (Sentencing Hr'g Tr. 25, 48.)

To count convictions for the purpose of § 924(e), the Third Circuit has adopted the "separate episode" test, in which "the individual convictions may be counted for purposes of sentencing enhancement so long as the criminal episodes underlying the convictions were distinct in time."  United States v. Schoolcraft, 879 F.2d 64, 73 (3d Cir. 1989) (collecting cases).  In other words, a court may count prior convictions resulting from criminal episodes that were distinct in place and/or time but not multiple convictions arising out of a single criminal episode.  Id. (citing United States v. Gillies, 851 F.2d 492, 497 (1st Cir. 1988)).

Applying Schoolcraft's "separate episode" test to the instant case, the Court concludes that the record established three prior convictions.  The two robberies occurred at different locations on different dates—one at 4308 Lancaster Avenue on November 8, 1974 and one at the Shell Gas Station at the intersection of 46th Street and Chestnut Street on January 22, 1975.  Accordingly, defendant's criminal record contained the three prior convictions for violent felonies or serious drug offenses required by § 924(e).

16

### D.      Adequacy of Guilty Plea Colloquies in State Court

Defendant argues that the state court failed to conduct an adequate colloquy at his guilty

plea hearings and that, as a result, the convictions used to enhance his sentence under § 924(e)

are invalid.  (Def.'s Mot. 7.)  Defendant failed to raise this argument on direct appeal and has not

demonstrated cause and prejudice or a fundamental miscarriage of justice.  Thus, the argument is

procedurally defaulted.  The Court will nevertheless address the merits of defendant's claim.

In Daniels v. United States, 532 U.S. 374, 376 (2001), the Supreme Court held that "as a

general rule," a defendant may not "challenge his federal sentence through a motion under 28

U.S.C. § 2255 on the ground that his prior convictions were unconstitutionally obtained."  The

possible exception to this rule is the "rare case[] in which no channel of review was actually

available to a defendant with respect to a prior conviction, due to no fault of his own."  Id. at

383–84 (concluding that the "circumstances of this case do not require us to determine whether a

defendant could use a motion under § 2255 to challenge a federal sentence based on such a

conviction").  Two considerations supported the Court's holding:  "ease of administration and the

interest in promoting finality of judgments."  Id. at 378–79.  While "[i]t is beyond dispute that

convictions must be obtained in a manner that comports with the Federal Constitution," the Court

held that "[o]ur system affords a defendant convicted in state court numerous opportunities to

challenge the constitutionality of his conviction."  Id. at 381.  These opportunities include direct

appeal, state post-conviction proceedings, and a writ of habeas corpus brought under 28 U.S.C.

§ 2254, but not a motion under § 2255.  Id. at 381–82.  "But once the 'door' to such review 'has

been closed' by the defendant *himself*—either because he failed to pursue otherwise available

remedies or because he failed to prove a constitutional violation—the conviction becomes final

and the defendant is not entitled to another bite at the apple simply because that conviction is

17

later used to enhance another sentence." Id. at 383 (emphasis in original) (internal citation omitted).

The Supreme Court's holding in Daniels makes clear that the instant § 2255 motion is not an appropriate vehicle for defendant's attack on the validity of his state court convictions. Daniels himself sought to overturn his state court convictions as the products of inadequate guilty pleas but was prohibited from doing so in a § 2255 proceeding. Id. at 384. Like Daniels, defendant could have challenged the adequacy of his guilty plea colloquies through direct appeal, state post-conviction proceedings, or a § 2254 petition. He has not alleged that some external force precluded such review. Defendant thus may not use a § 2255 motion to collaterally attack the validity of his state court convictions.

### E.    Ineffective Assistance of Counsel

Defendant argues that both his guilty plea and sentencing counsel were ineffective— guilty plea counsel for allowing defendant to stipulate to defendant's prior invalid convictions and sentencing counsel for failing to argue that defendant's prior convictions were invalid. (Def.'s Mot. 3–4; Def.'s Reply 3–4.) In the Third Circuit, a defendant need not raise claims of ineffective assistance of counsel on direct appeal; that court has expressed a preference that they be addressed for the first time in a § 2255 proceedings. United States v. Thornton, 327 F.3d 268, 271–72 (3d Cir. 2003); United States v. Cocivera, 104 F.3d 566, 570 (3d Cir. 1996). Accordingly, defendant's ineffective assistance of counsel claims are procedurally ripe for review.

Under Strickland v. Washington, 466 U.S. 668, 687–88 (1984), to succeed on a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient and that this deficient performance prejudiced the defense. To assess whether counsel's

18

performance was deficient, a court must determine "whether counsel's assistance was reasonable considering all the circumstances" including prevailing professional norms.  Id. at 687–88.  In Custis v. United States, 511 U.S. 485, 487 (1994), the Supreme Court held that "a defendant in a federal sentencing proceeding . . . has no . . . right (with the sole exception of convictions obtained in violation of the right to counsel) to collaterally attack prior convictions."  Examining § 924(e), the Court concluded that the ACCA "lacks any indication that Congress intended to permit collateral attacks on prior convictions used for sentence enhancement purposes."  Id. at 493.  Moreover, the Constitution does not require that such collateral attacks be allowed.  Id. at 496.  The two rationales underlying the Court's constitutional holding were those reiterated by the Daniels Court seven years later:  "ease of administration" and "the interest in promoting the finality of judgments."  Id. at 496–97.  As for the exception to this rule for complete denial of access to counsel, "failure to appoint counsel at all will generally appear from the judgment roll itself, or from an accompanying minute order.  But determination of claims of ineffective assistance of counsel, and failure to assure that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court records or transcripts . . . ."  Id. at 496.  While precluding defendants from "us[ing] the federal sentencing forum to gain review of [their] state convictions," the Court left open the possibility that a defendant could successfully attack a state court conviction through state procedures or federal habeas review and then apply to reopen any enhanced federal sentence.  Id. at 497.

As Custis prohibits a defendant from collaterally attacking his state court convictions at a federal sentencing proceeding, counsel need not raise such a collateral attack to be deemed effective.  In the instant case, had defendant's sentencing counsel argued that his state convictions were invalid due to inadequate guilty plea colloquies, the Court would have ruled,

pursuant to Custis, that counsel was precluded from making such arguments.  Such arguments

would have had no chance of success on the merits.  Thus, sentencing counsel's failure to raise

such claims was reasonable and does not satisfy Strickland.

While Custis and Daniels prohibited collateral attack on state convictions at, respectively,

sentencing and § 2255 proceedings, neither expressly precluded such attacks at federal change of

plea hearings.  Yet the principles animating those cases apply equally to the guilty plea setting.

The Custis and Daniels Courts were concerned with ease of administration and finality of

convictions.  In Daniels, the Court noted that "a district court evaluating a § 2255 motion is as

unlikely as a district court engaged in sentencing to have the documents necessary to evaluate

claims from long-past proceedings in a different jurisdiction."  532 U.S. at 379.  A district court

conducting a change of plea hearing is equally unlikely to have the relevant documents.  In

Custis, the Court ruled that by "challenging the previous conviction, the defendant is asking a

district court to deprive [the] [state-court judgment] of [its] normal force and effect in a

proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t].  These

principles bear extra weight in cases in which the prior convictions at issue . . . are based on

guilty pleas . . . ."  511 U.S. at 497 (alterations in original) (internal quotation marks and citations

omitted).  A challenge to a prior state conviction at a federal change of plea hearing would have

the same effect, undermining the finality of state judgments.

This precedent persuades the Court that at a change of plea hearing in federal court, a

defendant may not attack the validity of the state convictions that will be used to enhance his

federal sentence under § 924(e).  Defendant argues that his change of plea counsel was

ineffective for failing to challenge the stipulation to three prior state court convictions.  Had

20

defendant's counsel sought raise such an argument, the Court would have ruled that it was precluded under <u>Custis</u> and <u>Daniels</u>.  Thus, no prejudice resulted from counsel's failure to do so. As the evidence discloses three convictions and there was no way to challenge their adequacy at the change of plea hearing, under <u>Strickland</u>, the performance of defendant's guilty plea counsel was not ineffective.

## V.     CERTIFICATE OF APPEALABILITY

In the Third Circuit, a certificate of appealability is granted only if the defendant makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition [or motion] alleges a deprivation of constitutional rights."  <u>Morris v. Horn</u>, 187 F.3d 333, 340 (3d Cir. 1999); <u>see also</u> 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.")  The Court concludes that defendant has not made such a showing.  Thus, the Court will not issue a certificate of appealability.

## VI.     CONCLUSION

For all of the aforementioned reasons, defendant's *pro se* Motion to Have Sentence Vacated, Set Aside, and/or Corrected Pursuant to 28 U.S.C. § 2255 is denied and a certificate of appealability will not issue.


**BY THE COURT:**


**/s/ Honorable Jan E. DuBois**

**JAN E. DUBOIS, J.**