**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| vs. | : | |
| | : | |
| RICHARD BALLARD | : | NO.  03-810-01 |

DuBOIS, J.                                                                                    April 13, 2012

**M E M O R A N D U M**

## I.    INTRODUCTION

In this case, defendant Richard Ballard pled guilty to possession with intent to distribute cocaine and possession of a firearm and ammunition by a convicted felon.  He was sentenced on March 22, 2006, to 180 months' imprisonment and is presently incarcerated at Low Security Correctional Institution–Allenwood.  Presently before the Court is defendant's pro se Motion Pursuant to Rule 60(b)(6) and Request for Equitable Tolling or in the Alternative Allow Petitioner to Proceed Under F.R.Crim. P. 32(c)(3)(d) ("Defendant's Rule 60(b)(6) Motion").  In that motion, defendant argues that the Court should amend his Presentence Investigation Report ("PSR") because it contains untrue information that is negatively affecting his conditions of incarceration.[1]  For the reasons set forth below, the Court denies Defendant's Rule 60(b)(6) Motion.

## II.    BACKGROUND

A detailed factual and procedural history of this case is included in the prior opinions of this Court and the Court of Appeals for the Third Circuit.  See United States v. Ballard, 245 F.

---

[1] Defendant also filed a pro se Motion for Summary Judgement [sic.], which the Court treats as a reply brief because it reiterates the arguments set forth in the Rule 60(b)(6) Motion.

App'x 137 (3d Cir. 2007); United States v. Ballard, Cr. no. 03-810, 2009 WL 637384 (E.D. Pa. Mar. 11, 2009); United States v. Ballard, Cr. no. 03-810, 2005 WL 1690826 (E.D. Pa. July 18, 2005).  This Memorandum sets forth only the facts essential to resolving Defendant's Rule 60(b)(6) Motion.

The prosecution of defendant arose from the Philadelphia Police Department's investigation of a report of a robbery and attempted shooting that took place on June 1, 2003. The Philadelphia Police Department received a complaint that defendant was among a group of five men who stole a necklace from the complainant and tried to shoot him.  The complainant, Richard Felder, identified defendant as having fired several shots at him.  After further investigation, officers secured an arrest warrant for defendant and a search warrant for his residence, which they executed on July 9, 2003.  The officers arrested defendant at his home and recovered a handgun, a shotgun, narcotics, narcotics paraphernalia, and body armor.

Defendant was charged in the Municipal Court of Philadelphia County with, inter alia, robbery, aggravated assault, and various weapons and narcotics offenses.  Docket nos. MC-51-CR-0751131-2003, MC-51-CR-0751531-2003 (Phila. Cnty. Mun. Ct.).  The United States Attorney's Office adopted the prosecution, and, on December 9, 2003, a federal grand jury indicted defendant on six counts: (1) possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c) (Count I); (2) possession of cocaine base ("crack") in violation of 21 U.S.C. § 844(a)(1) (Count II); (3) possession of heroin, in violation of 21 U.S.C. § 841(a) (Count III); (4) possession of a firearm and ammunition after having been convicted in state court of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1), 924(e) (Count IV); (5) possession of body armor after having been convicted of a crime of violence, in violation of 18 U.S.C. § 931 (Count V); and (6)

2

possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C.

§ 924(c)(1) (Count VI).  Thereafter, the Philadelphia District Attorney's Office withdrew all of

the state charges, including those related to the alleged robbery and attempted shooting of Mr.

Felder.

Defendant entered into a plea agreement with the government.  On August 30, 2004, the

Court held a plea hearing and accepted defendant's guilty plea to Counts I, IV, and VI of the

Indictment.  During the plea hearing, defendant acknowledged reading the agreement, discussing

it with his attorney, and understanding it.  Under the plea agreement, defendant expressly waived

his rights to appeal or collaterally attack his conviction and sentence unless (1) the government

appealed from defendant's sentence, (2) defendant's sentence exceeded the statutory maximum,

or (3) the Court erroneously departed upward from the otherwise applicable guideline range.

(Plea Agr., Docket no. 37–2, ¶ 9.)  The Court later permitted defendant to withdraw his plea as to

Count VI, concluding that defendant did not understand the nature of that count but that his plea

was knowing and voluntary in all other respects.  Ballard, 2005 WL 1690826, at *4–6.

Before defendant's sentencing hearing, the United States Probation Office prepared

defendant's PSR and provided copies to defendant and his counsel.  Paragraphs ten through

fourteen of the PSR, which defendant challenges in his Rule 60(b)(6) Motion,[2] summarize the

events leading to the Philadelphia Police Department's investigation of defendant in connection

with the alleged robbery and attempted shooting of Mr. Felder.  The relevant portion of the PSR

states that Mr. Felder reported the incident by telephone but grew hostile while officers were

transporting him to a police station to take a formal statement.  Although Mr. Felder initially

---

[2] Defendant directs his argument to paragraphs eleven through fourteen, (Def.'s R. 60(b)(6) Mot. 5), but the Court includes paragraph ten because it also contains information related to the challenged paragraphs.

3

declined to enter the police station and left without giving a statement, he later returned and entered the station on his own.  Before he returned, police ran a background check on Mr. Felder and learned that there was an active warrant for his arrest in connection with another crime. Accordingly, when Mr. Felder returned to the police station, they arrested him.  While he was in custody, Mr. Felder gave a statement regarding the June 1, 2003, alleged robbery and shooting, stating that defendant had brandished a weapon and fired several shots.  In summarizing these events, the PSR made clear that its recounting was "[a]ccording to incident reports" and that the Philadelphia Police Department never recovered bullet casings or other physical evidence in support of Mr. Felder's account.  (PSR ¶¶ 11–12.)

Defendant's counsel raised eight objections to the PSR before the sentencing hearing, none of which involved the information in paragraphs ten through fourteen.  The probation officer addressed each of these objections in the PSR Addendum, dated February 16, 2006.  At the March 22, 2006, sentencing hearing, defendant acknowledged that he had received a copy of the PSR and reviewed it with his attorney.  (March 22, 2006, Hr'g Tr. ("3/22/06 Tr.") 2–3.) Defendant's counsel presented additional oral objections to the PSR during the hearing, each of which the Court addressed before imposing sentence; none of those objections concerned Mr. Felder's allegations.  As part of her argument regarding what sentence was appropriate, defendant's counsel argued that there was "no basis whatsoever to say that [defendant] was involved in a shooting" and that "the entire matter evaporated . . . possibly because the plaintiff waffled as to whether or not there was any shooting."  (Id. at 83–84.)  However, neither defendant nor his counsel challenged the inclusion of paragraphs ten through fourteen in the PSR, nor did they ask that those paragraphs be modified or amended in any way.

The Court imposed a sentence of 180 months' incarceration, to be followed by six years of supervised release.  The sentence was the mandatory minimum term of imprisonment applicable to defendant under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on his conviction for a violation of 18 U.S.C. § 922(g) after having three prior convictions for a "violent felony or a serious drug offense."  Despite having waived his appellate rights in the plea agreement, defendant filed an appeal.  The Third Circuit affirmed defendant's conviction and sentence, concluding that the appellate waiver was valid and that the sentence did not implicate either exception permitting a direct appeal—an illegal sentence or an erroneous upward departure.  Ballard, 245 F. App'x at 139–40.  However, the Third Circuit did not address whether the collateral attack waiver was valid, stating instead that defendant could "raise an ineffective assistance of counsel claim on collateral review."  Id. at 139.

On December 8, 2008, defendant filed a Pro Se Motion to Have Sentence Vacated, Set Aside, and/or Corrected Pursuant to 28 U.S.C. § 2255, in which he argued, inter alia, that he should not have been sentenced pursuant to the ACCA because there was no factual basis for the three prior convictions to which he stipulated in the plea agreement.  Noting that defendant's statements at the plea hearing and at sentencing, as well as the plea agreement, contradicted defendant's argument, the Court concluded that defendant validly waived his appellate and other postconviction rights and was not entitled to relief.  Ballard, 2009 WL 637384, at *7–8. Notwithstanding this conclusion, the Court addressed the merits of defendant's claims.  It rejected his argument regarding the ACCA and his claims that he was incompetent to plead guilty due to medication, that he had only two prior convictions instead of three, that his prior convictions arose from inadequate plea colloquies, and that his attorneys had been ineffective. Id. at *8–12.

III.    **DISCUSSION**

A.      **Parties' Arguments**

In his Rule 60(b)(6) Motion, defendant argues that "untrue, adverse information" in paragraphs ten through fourteen of the PSR "is having a direct adverse impact on decisions made by the prison officials . . . at [Low Security Correctional Institution–Allenwood] with respect to [defendant's] security level, institutional placement, halfway house consideration and camp placement." (Def.'s R. 60(b)(6) Mot. 2–3.) Specifically, he avers that the PSR contained "uncharged, unindicted, unconvicted conduct of an entirely different offense" that is "not accurate or relevant[] and is not part of the instant convicted conduct." (Id. at 9.) He includes documentation from the Philadelphia Police Department that he claims "prove[s] beyond a doubt that [he] had nothing to do with the shooting." (Id. at 12; see also id. Exs. A–O.) He argues that the Court should "[o]rder the [United States] Probation [Office] to amend the PSR" under Rule 60(b)(6)[3] or "[Federal Rule of Criminal Procedure] 32(c)(3)(D)" because "all post conviction avenues of relief have been defaulted, due to counsel of record's deficient performance by not challenging these unsubstantiated statements." (Id. at 10, 12.)

The government asserts that defendant's motion should be denied for three reasons. First, defendant's motion is a collateral attack on his conviction, and defendant waived his collateral-attack rights in his plea agreement. (Gov't Resp. Def.'s Mot. Relief R. 60(b)(6) ("Gov't Opp'n") 3–4.) Second, even if defendant could attack his sentence, Federal Rule of Civil Procedure 60(b)(6) does not apply to criminal cases except in very limited circumstances where a defendant challenges procedural aspects of a prior 28 U.S.C. § 2255 habeas proceeding.

---

[3] That rule states, in relevant part: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief." A motion invoking Rule 60(b)(6) must be filed "within a reasonable time" of the decision from which the movant seeks relief. Fed. R. Civ. P. 60(c)(1).

(Id. at 4–7.)  Third, the inclusion of the challenged paragraphs in the PSR was proper.  (Id. at 7–10.)

The Court agrees that defendant's motion should be denied for the three reasons advanced by the government.  The Court addresses each reason in turn.

### B.    Defendant's Motion Is Barred by His Waiver of Appellate and Collateral-Attack Rights

#### 1.    Legal Standard

Waivers of appellate and collateral attack rights are generally valid if entered into "knowingly and voluntarily."  United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008); United States v. Gwinnett, 483 F.3d 200, 203 (3d Cir. 2007).  Such waivers should be strictly construed. United States v. Khattak, 273 F.3d 557, 562 (3d Cir. 2001).  "In determining whether a waiver . . . is 'knowing and voluntary,' the role of the sentencing judge [in conducting a colloquy under Federal Rule of Criminal Procedure 11] is critical."  Id. at 563.  Yet even if a waiver of appellate and collateral attack rights is knowing and voluntary, "an error amounting to a miscarriage of justice may invalidate" it.  Id. at 558.  To determine whether a "miscarriage of justice" has occurred, courts in this Circuit consider the following factors: "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result."  Khattak, 273 F.3d at 563 (citing United States v. Teeter, 257 F.3d 14, 25–26 (1st Cir. 2001)).

The Third Circuit has declined to "earmark specific situations," in which enforcement of a waiver would amount to a "miscarriage of justice."  Id. at 563.  However, enforcement of a waiver where "counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver" may result in a miscarriage of justice.  Mabry, 536 F.3d at 243; see also

United States v. Akbar, 181 F. App'x 283, 286 (3d Cir. 2006) ("[I]t is possible for there to be a miscarriage of justice when plea proceedings were tainted by ineffective assistance of counsel." (internal quotation marks and citation omitted)).  A miscarriage of justice may also occur "where enforcing a collateral attack waiver would result in barring an appeal expressly preserved in the plea agreement."  Mabry, 536 F.3d at 243 (citing United States v. Shedrick, 493 F.3d 292, 303 (3d Cir. 2007)).

### 2.  Analysis

In this case, defendant's plea waiver expressly provided, "[D]efendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law."  (Plea Agr. ¶ 9 (emphasis added).)  The Third Circuit concluded that the appellate waiver was valid, although it left open the possibility of defendant raising a claim of ineffective assistance of counsel through collateral review.  Ballard, 245 F. App'x at 139.  In its Memorandum and Order dated March 11, 2009, the Court concluded that defendant's waiver of appeal and collateral attack rights "was not the product of ineffective assistance of counsel and that its enforcement would not work a miscarriage of justice."  Ballard, 2009 WL 637384, at *7. The waiver bars the motion presently before the Court because it challenges a "matter relating to this prosecution" and because the waiver prohibits attempts to seek relief under "any other provision of law."[4]  Accordingly, as long as the waiver is enforceable, defendant has waived the right to file this motion.

---

[4] The waiver's exception clause does not apply here.  That clause permitted defendant to file a direct appeal if the government appealed his sentence, if he received a sentence in excess of the statutory maximum, or if the Court erroneously applied an upward departure.

Nothing in Defendant's Rule 60(b)(6) Motion undermines the Court's prior conclusion that defendant's waiver of his collateral attack rights was valid and enforceable.  Construing defendant's pro se motion broadly in his favor, see Haines v. Kerner, 404 U.S. 519, 520 (1972), his argument is that enforcement of the waiver would be a miscarriage of justice because he is "unlearned" in legal issues and "relied heavily on paid counsel's representation and experience to provide effective assistance," but his counsel improperly failed to object to the inclusion of paragraphs ten through fourteen in the PSR.  (Def.'s R. 60(b)(6) Mot. 2–3.)  However, the Khattak factors—"the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result"—all weigh against defendant.

As discussed infra, contrary to defendant's argument, the challenged paragraphs of the PSR accurately stated the background of defendant's arrest and did not adopt Mr. Felder's allegations as truth.  Even assuming arguendo that the PSR had taken Mr. Felder's allegations as truth, the gravity of the error, its character, and its impact would all weigh in the government's favor under Khattak.  The portion of the PSR referring to Mr. Felder's report dealt with a tangential matter in describing the background of the investigation that led to defendant's arrest. It had no effect on the charges defendant faced, his convictions for narcotics and weapons possession offenses, or his sentence, which was a nonguideline sentence imposed at the statutory mandatory minimum.  Finally, defendant "acquiesced in the result."  Khattak, 273 F.3d at 563. Despite receiving the PSR before sentencing, acknowledging at sentencing that he reviewed it, and raising a number of challenges to other parts of the PSR, he never objected to paragraphs ten through fourteen.  Furthermore, he did not raise this issue on appeal or in his earlier pro se

§ 2255 motion.  His claim that "every procedural vehicle or statute" has been defaulted "due to counsel of record's deficient performance," (Def.'s R. 60(b)(6) Mot. 3), rings hollow.

Thus, the Court reaffirms its conclusion that the waiver is valid and enforceable as set forth in the Memorandum and Order dated March 11, 2009, and further concludes that Defendant's Rule 60(b)(6) Motion is barred by that waiver.  Defendant's claims are "insubstantial" and "clearly encompassed by the broad waiver," and they "do not implicate fundamental rights or constitutional principles."  Mabry, 536 F.3d at 239, 243.  Thus, they do not present the "grave and out of the ordinary" circumstances that would transform enforcement of a knowing and voluntary waiver into a miscarriage of justice.

### C.    Defendant's Motion Is Barred Whether Treated as a Motion Under Rule 60(b)(6) or a Successive § 2255 Motion

The Court next addresses whether Federal Rule of Civil Procedure 60(b)(6) would be a viable basis for relief if defendant's waiver of his collateral-attack rights did not bar his Rule 60(b)(6) Motion.

#### 1.    Legal Standard

"Rule 60(b) cannot be used as an independent means to relieve a defendant of a judgment in a criminal case, because the Federal Rules of Civil Procedure are not applicable to criminal cases." Gray v. United States, 385 F. App'x 160, 162 (3d Cir. 2010); see also United States v. Mosavi, 138 F.3d 1365, 1366 (11th Cir. 1998) ("Rule 60(b) simply does not provide for relief from judgment in a criminal case.").  A federal prisoner challenging his conviction must do so by filing a motion pursuant to 28 U.S.C. § 2855; he may not "avoid this process by resorting to Federal Rules of Procedure." United States v. Dillon, 229 F. App'x 196, 197 (3d Cir. 2007) (affirming denial of motion purporting to be filed pursuant to Federal Rule of Civil Procedure 60(b) because motion was simply successive habeas motion).  A defendant may, however,

10

pursue a Rule 60(b) motion under § 2255 if he attacks "'some defect in the integrity of the federal habeas proceedings.'"  United States v. Andrews, No. 10-2088, 2012 WL 641922, at *2 (3d Cir. Feb. 29, 2012) (quoting Gonzalez v. Crosby, 545 U.S. 524, 532 (2005)).  For example, a Rule 60(b) motion may seek relief from a district court's decision not to reach the merits of a § 2255 motion when the district court had concluded that the § 2255 motion was time-barred.  Id.

### 2.  Analysis

Defendant's motion fails regardless of whether the Court treats it as having been brought under Rule 60(b) or under 28 U.S.C. § 2255.  Defendant is not entitled to relief under Rule 60(b)(6) because his challenge does not concern the integrity of prior habeas proceedings. Instead, it deals solely with the alleged "adverse information in the PSR."  (Def.'s R. 60(b)(6) Mot. 4.)  Because defendant's motion does not "attack[] the manner in which [an] earlier habeas judgment was procured," Pridgen v. Shannon, 380 F.3d 721, 727 (3d Cir. 2004), defendant cannot proceed under Rule 60(b)(6).  His only recourse, if any, is through a habeas motion under § 2255.  Cf. Andrews, 2012 WL 641922, at *2 (holding that a Rule 60(b)(6) motion was not a successive § 2255 habeas motion where the defendant argued that the district court should reconsider a decision that a prior habeas motion was untimely, apply equitable tolling, and reach the merits of the motion); see also Saunders v. United States, 380 F. App'x 959, 964 (11th Cir. 2010) (addressing merits of Rule 60(b) motion alleging that counsel was ineffective during § 2255 proceeding).

However, defendant is not entitled to relief under § 2255.  Even assuming arguendo that the collateral-attack waiver would not bar the motion, it would be denied as a successive habeas motion.  See 28 U.S.C. § 2255(h).  The Court denied a prior motion under § 2255 by Memorandum and Order dated March 11, 2009, and the Third Circuit has not certified

Defendant's Rule 60(b)(6) motion.  See 28 U.S.C. § 2255(h) (permitting second or successive § 2255 habeas motion when "the appropriate court of appeals" certifies that the motion "contains . . . newly discovered evidence that . . . no reasonable factfinder would have found the movant guilty[, or] . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court").

Thus, even if defendant had not waived his collateral attack rights, he would not be entitled to relief, regardless of whether the Court analyzed his motion under Federal Rule of Civil Procedure 60(b)(6) or under 28 U.S.C. § 2255.[5]

### D.  The Merits of Defendant's Motion

As set forth supra, defendant waived his right to a collateral attack on his sentence or conviction, and his motion is not proper under either Rule 60(b)(6) or 28 U.S.C. § 2255. Nevertheless, the Court will address the merits of defendant's motion.  As discussed in section III.A supra, the Court construes defendant's primary argument to be that the allegedly false information in the PSR has resulted in his adverse classification during his imprisonment. However, defendant also cites Federal Rule of Criminal Procedure 32, which governs, inter alia, preparation and consideration of PSRs at sentencing.  Construing defendant's pro se motion generously, the Court construes the motion to also allege a violation of that rule.

The Court addresses whether the information was properly included in the PSR and considered at sentencing before addressing defendant's argument regarding prison classification.

---

[5] Defendant also references Federal Rule of Criminal Procedure 32, which is not an independent ground for relief.

1.    **The Inclusion of the Information in the PSR and Its Consideration at Sentencing Was Proper**

i.    **Legal Standard**

"[S]entencing courts have broad discretion to consider various kinds of information." United States v. Watts, 519 U.S. 148, 151 (1997); see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). At sentencing, "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." United States Sentencing Guidelines ("USSG") § 6A1.3. The "sufficient indicia of reliability" standard should be "applied rigorously." United States v. Campbell, 295 F.3d 398, 406 (3d Cir. 2002) (quotation omitted).

Federal Rule of Criminal Procedure 32 sets forth sentencing procedures, including the procedure by which courts consider PSRs and any objections thereto. That rule requires the Court to "verify that the defendant and the defendant's attorney have read and discussed the [PSR] and any addendum to the report." Fed. R. Crim. P. 32(i)(1)(A); see also United States v. Mays, 798 F.2d 78, 80 (3d Cir. 1986). If a defendant disputes any portion of the PSR, the Court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B); United States v. Fumo, 655 F.3d 288, 311 (3d Cir. 2011).

ii.     **Analysis**

The inclusion of paragraphs ten through fourteen in defendant's PSR was proper.  As set forth below, the information was accurate, and the Court complied with all relevant authorities, including Rule 32 and the United States Sentencing Guidelines ("USSG").

First, the premise of defendant's motion is flawed.  He is incorrect that the information in the PSR is "not accurate" and "not relevant."  (Def.'s R. 60(b)(6) Mot. 9.)  The PSR did not adopt Mr. Felder's allegations as fact.  (See PSR ¶¶ 10, 11 (referring to "Initial Investigation— Report of Shooting" and "alleged shooting" and stating that Mr. Felder's account is "[a]ccording to incident reports").)  Instead, the PSR accurately stated that the Philadelphia Police Department investigation of defendant began with Mr. Felder's report of an alleged shooting.  Moreover, the PSR fully accounted for the suspicious circumstances under which Mr. Felder made the allegations.  (See id. ¶¶ 12–14 (stating that "officers were unable to recover any bullet casings or other physical evidence of a shooting" and describing, inter alia, Mr. Felder's "agitated, non-cooperative, and hostile" behavior).)  Rather than contradicting the PSR, the documentation defendant has submitted in support of his Rule 60(b)(6) Motion is consistent with the PSR's contents: both describe a tentative report of a robbery and attempted shooting made by a man after he was arrested on a warrant for an unrelated aggravated assault.  Accordingly, the Court concludes the challenged information had "sufficient indicia of reliability to support its probable accuracy" and did not violate USSG § 6A1.3.

Second, the Court complied with Rule 32 in considering this information at sentencing. In accordance with Rule 32(i)(1)(A), the Court asked defendant whether he received a copy of the PSR and whether he reviewed it with his attorney, and defendant answered "Yes, I did" to both questions.  (3/22/06 Tr. 2–3.)  The United States Probation Office addressed defendant's

objections to the PSR in the PSR Addendum, and defendant's counsel raised additional objections during the sentencing hearing, all of which the Court resolved.  Neither defendant nor his counsel raised any objection to the challenged portion of the PSR.  Instead, defense counsel's observation that the Philadelphia District Attorney dismissed the robbery and assault charges "possibly because the plaintiff waffled as to whether or not there was any shooting," (id. at 83–84), is further evidence that the PSR accurately reflected the events that led to defendant's arrest. Accordingly, there was no violation of Rule 32(i)(3)(B) during defendant's sentencing.

Third, to the extent that defendant's motion could be construed to claim that the Court improperly relied on the challenged information in imposing his sentence,[6] defendant's argument is rejected.  The Court could not have relied on this information because, instead of imposing a sentence within the guideline range of 188 to 235 months' incarceration, the Court imposed a sentence below the applicable guideline range—specifically, the mandatory-minimum sentence of 180 months' incarceration.  Even if the Court had relied on the information, doing so would have been proper.  18 U.S.C. § 3661 specifically provides that "[n]o limitation shall be placed on the information concerning the . . . conduct of a person . . . which a court . . . may receive and consider" at sentencing.  It is irrelevant that the information addressed "unconvicted, uncharged conduct"; the Court's authority to consider such conduct in making sentencing decisions—for example, to determine offense characteristics in calculating the guideline range—is beyond question.  See United States v. Watts, 519 U.S. 148, 153–54 (1997) (observing that USSG § 1B1.3 "directs sentencing courts to consider all other related conduct, whether or not it resulted in a conviction," including "conduct of which a defendant has been acquitted"); see also United

---

[6] Defendant writes at one point in his pro se motion that he "is not challenging the sentence or conviction in this case."  (Def.'s R. 60(b)(6) Mot. 12.)  Nonetheless, the Court construes the motion to raise this argument in light of defendant's citations to Rule 32 and his repeated reference to the PSR having contained false information.

States v. Heyward, 177 F. App'x 214, 215 (3d Cir. 2006) (applying Watts and holding that court

properly considered conduct of which defendant was acquitted).

The Court thus concludes that the challenged information was properly included in the

PSR and that its consideration during sentencing was acceptable.

### 2.      Defendant's Claim Regarding Prison Officials' Use of Information

To the extent that defendant argues that prison officials at Low Security Correctional

Institution–Allenwood are making decisions regarding his "security level, institutional

placement, halfway house consideration, and camp placement" based on the allegedly false

information, (Def.'s R. 60(b)(6) Mot. 3), his claim also fails, whether it is construed as being

brought under the Due Process Clause or the Privacy Act.

As to the Due Process Clause, defendant's claim fails for two reasons: first, as discussed

supra, the information in the PSR was not erroneous, and second, defendant has no constitutional

right to any particular classification during his incarceration.  In Williams v. Federal Bureau of

Prisons and Parole Commission, 85 F. App'x 299 (3d Cir. 2004), the Third Circuit assumed

arguendo that it would recognize a right of expungement of inaccurate information in a

prisoner's file[7] and that such a right could be redressed in a habeas petition brought by a federal

prisoner under 28 U.S.C. § 2241.[8]  Like defendant in this case, the prisoner in Williams claimed

---

[7] That right was set forth in Paine v. Baker, 595 F.2d 197 (4th Cir. 1979), and has never been
adopted by the Third Circuit, which noted that "other Circuit Courts of Appeal have expressly
questioned [Paine's] precedential value."  Williams, 85 F. App'x at 304; see also Toolasprashad
v. Grondolsky, 570 F. Supp. 2d 610, 633 (D.N.J. 2008) (discussing Williams and dismissing
Paine claim as successive habeas petition).

[8] There is no consensus about the proper manner for a federal prisoner to present a Paine claim.
Compare Williams, 85 F. App'x at 304 (assuming arguendo that claim can be raised in 28 U.S.C.
§ 2241 petition), with Hill v. Sciarrota, 140 F.3d 210, 216 (2d Cir. 1998) ("If a defendant claims
to be detrimentally affected by the use of an inaccurate PSR in decisionmaking as to parole or
the conditions of his incarceration, he should challenge such use in the parole proceedings or

that information in his PSR "prejudiced him by causing him to be inappropriately classified in prison." 85 F. App'x at 304.  The Third Circuit denied relief because federal inmates have no "legitimate statutory or constitutional entitlement" to "[specific] classification and rehabilitative programs in the federal system."  Id.; see Moody v. Daggett, 429 U.S. 78, 89 n.9 (1976).  Accordingly, even if the information in the PSR were false, defendant would have "no constitutional right to a particular classification," and thus defendant's claim would still fail.  Id.

Generously construed, defendant's motion invokes the Privacy Act of 1974, 5 U.S.C. § 552a, as an additional basis for removal of the allegedly false information from the PSR.  (E.g., Def.'s R. 60(b)(6) Mot. 11.)  This claim is also rejected.  "The Privacy Act gives an individual the right to request that an agency amend any records that it maintains on him or her, 5 U.S.C. § 552a(d).  However, '[u]nder regulations . . . presentence reports and BOP inmate records are exempt from the amendment provisions of the Act.'"  Williams, 85 F. App'x at 306 n.14 (quoting White v. United States Prob. Office, 148 F.3d 1124, 1125 (D.C. Cir. 1998) and 28 C.F.R. §§ 16.51(c), 16.97(a)); see also Griffin v. Ashcroft, No. 02-5399, 2003 WL 22097940, at *1 (D.C. Cir. Sept. 3, 2003) (rejecting defendant's claim that Bureau of Prisons violated Privacy Act by improperly relying on PSR information in determining his custody classification).[9]

---

seek injunctive relief against the relevant parole or correctional officials.") and with Toolasprashad, 570 F. Supp. 2d at 633 ("[A]n expungement claim falls outside § 2241 jurisdiction and has to be raised in a separate Bivens action.").  Defendant's claim fails even assuming the Third Circuit would recognize an expungement right and that such a right could be pursued in a motion under 28 U.S.C. § 2255.

[9] Defendant's reliance on Sellers v. Bureau of Prisons, 959 F. 2d 307 (D.C. Cir. 1992), is misplaced.  That case addressed a civil action brought under 5 U.S.C. § 552a(g), not a request for amendment under 5 U.S.C. § 552a(d).  The Sellers court stated that, in a prior unpublished opinion, it had affirmed dismissal of the plaintiff's request for amendment of his prison records under 5 U.S.C. § 552a(d).  959 F.2d at 309 (citing Sellers v. Bureau of Prisons, No. 88-5369, slip op. at *1 (D.C. Cir. June 13, 1989)).

Thus, defendant is not entitled to relief based on his allegation that prison officials are using the allegedly false information to make "adverse determinations" regarding his "custody level and rehabilitation programming."  (Def.'s R. 60(b)(6) Mot. 5.)  This is the case whether defendant's claim is considered under the Due Process Clause or the Privacy Act

### 3.      Conclusion

For the foregoing reasons, even if the Court were to reach the merits of defendant's claims defendant would not be entitled to relief.

## IV.    CERTIFICATE OF APPEALABILITY

In the Third Circuit, a certificate of appealability is granted only if the defendant makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition [or motion] alleges a deprivation of constitutional rights."  Morris v. Horn, 187 F.3d 333, 340 (3d Cir. 1999); see also 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.")  The Court concludes that defendant has not made such a showing.  Thus, the Court will not issue a certificate of appealability.

## V.     CONCLUSION

For the reasons stated above, Defendant's Rule 60(b)(6) Motion is denied, and a certificate of appealability will not issue.  An appropriate Order follows.